IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Philip A. Brimmer**

Civil Action No. 17-cv-01056-PAB-NRN

JOE HAND PROMOTIONS, INC.,

    Plaintiff,

v.

PURPLE PIG, LLC, d/b/a Purple Pig Pub, and
JOE ANDREW TRUJILLO,

    Defendants.

---

# ORDER

---

This matter is before the Court on plaintiff's Notice of Motion and Motion for Default Judgment [Docket No. 18].

## I. BACKGROUND

Because of the Clerk of Court's entry of default, Docket No. 17, the allegations in plaintiff's complaint, Docket No. 1, are deemed admitted. *Olcott v. Del. Flood Co.*, 327 F.3d 1115, 1125 (10th Cir. 2003). This case concerns defendants' unauthorized broadcast of *Ultimate Fighting Championship® 205: Alvarez v. McGregor* (the "Program") at the Purple Pig Pub in Alamosa, Colorado on November 12, 2016. Docket No. 1 at 1, 3, ¶¶ 1, 2, 11-12. Plaintiff possessed the exclusive right to license and distribute the Program to commercial establishments. *Id.* at 3, ¶ 8. Without obtaining permission from plaintiff, defendants, "[b]y unauthorized satellite transmission or . . . unauthorized receipt over a cable system . . . willfully intercepted or received the interstate communication of the Program" and unlawfully exhibited it to patrons at the

Purple Pig Pub. *Id.*, ¶¶ 11-12.

Plaintiff filed this lawsuit on April 28, 2017 asserting claims for satellite and/or cable piracy in violation of 47 U.S.C. §§ 553 and 605. *Id.* at 4. After defendants failed to respond to the complaint or otherwise appear in the action, plaintiff moved for entry of default. Docket No. 16. The Clerk of the Court entered default against defendants on July 24, 2017. Docket No. 17. On December 6, 2017, plaintiff filed a motion for default judgment. Docket No. 18.

## II. LEGAL STANDARD

In order to obtain a judgment by default, a party must follow the two-step process described in Fed. R. Civ. P. 55. First, the party must seek an entry of default from the Clerk of the Court under Rule 55(a). Second, after default has been entered by the Clerk, the party must seek judgment under the strictures of Rule 55(b). *See Williams v. Smithson*, 57 F.3d 1081, 1995 WL 365988, at *1 (10th Cir. June 20, 1995) (unpublished table decision) (citing *Meehan v. Snow*, 652 F.2d 274, 276 (2d Cir. 1981)).

The decision to enter default judgment is "committed to the district court's sound discretion." *Olcott*, 327 F.3d at 1124 (citation omitted). In exercising that discretion, the Court considers that "[s]trong policies favor resolution of disputes on their merits." *Ruplinger v. Rains*, 946 F.2d 731, 732 (10th Cir. 1991) (quotation and citations omitted). "The default judgment must normally be viewed as available only when the adversary process has been halted because of an essentially unresponsive party." *Id.* It serves to protect plaintiffs against "interminable delay and continued uncertainty as to his rights." *Id.* at 733. When "ruling on a motion for default judgment, the court may

rely on detailed affidavits or documentary evidence to determine the appropriate sum for the default judgment." *Seme v. E&H Prof'l Sec. Co., Inc.*, No. 08-cv-01569-RPM-KMT, 2010 WL 1553786, at *11 (D. Colo. Mar. 19, 2010).

A party may not simply sit out the litigation without consequence. *See Cessna Fin. Corp. v. Bielenberg Masonry Contracting, Inc.*, 715 F.2d 1442, 1444-45 (10th Cir. 1983) ("[A] workable system of justice requires that litigants not be free to appear at their pleasure. We therefore must hold parties and their attorneys to a reasonably high standard of diligence in observing the courts' rules of procedure. The threat of judgment by default serves as an incentive to meet this standard"). One such consequence is that, upon the entry of default against a defendant, the well-pleaded allegations in the complaint are deemed admitted. *See* Charles Wright, Arthur Miller & Mary Kane, Fed. Prac. & Proc. § 2688 (3d ed. 2010). "Even after default, however, it remains for the court to consider whether the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit mere conclusions of law." *Id.* at 63. A court need not accept conclusory allegations. *Moffett v. Halliburton Energy Servs., Inc.* 291 F.3d 1227, 1232 (10th Cir. 2002). Although "[s]pecific facts are not necessary" in order to state a claim, *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (per curiam) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)), the well-pleaded facts must "permit the court to infer more than the mere possibility of misconduct." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (internal quotation and alteration marks omitted). Thus, even though modern rules of pleading are somewhat forgiving, "a complaint still must contain either direct or inferential allegations respecting

3

all the material elements necessary to sustain a recovery under some viable legal theory." *Bryson v. Gonzales*, 534 F.3d 1282, 1286 (10th Cir. 2008) (quotation and citation omitted).

## III. ANALYSIS

### A. Jurisdiction

Before addressing the merits of plaintiff's motion for default judgment, the Court must determine whether it has subject matter and personal jurisdiction over this case. *See Dennis Garberg & Assocs., Inc. v. Pack-Tech Int'l Corp.*, 115 F.3d 767, 772 (10th Cir. 1997) (holding that "a district court must determine whether it has jurisdiction over the defendant before entering judgment by default against a party who has not appeared in the case"). The Court finds that it has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because plaintiff asserts claims under a federal statute. Additionally, the Court may exercise personal jurisdiction over defendants because defendants operate the Purple Pig Pub in Alamosa, Colorado and the alleged statutory violation took place in Colorado.

### B. Violations of 47 U.S.C. §§ 553 and 605

Plaintiff asserts violations of 47 U.S.C. §§ 553 and 605. Section 553 provides that "[n]o person shall intercept or receive or assist in intercepting or receiving any communications service offered over a cable system, unless specifically authorized to do so by a cable operator or as may otherwise be specifically authorized by law." 47 U.S.C. § 553(a)(1). Likewise, § 605 states:

> No person not being authorized by the sender shall intercept any radio communication and divulge or publish the existence, contents, substance,

4

> purport, effect, or meaning of such intercepted communication to any person. No person not being entitled thereto shall receive or assist in receiving any interstate or foreign communication by radio and use such communication (or any information therein contained) for his own benefit or for the benefit of another not entitled thereto.

42 U.S.C. § 605(a)(6). Plaintiff alleges in its complaint that it had the exclusive right to broadcast the Program on November 12, 2016. Docket No. 1 at 1, 3, ¶¶ 1, 8. Plaintiff further asserts that, without obtaining permission from plaintiff and "by unauthorized satellite transmission or . . . unauthorized receipt over a cable system," defendants "willfully intercepted or received the interstate communication of the Program" and "then unlawfully transmitted, divulged and published said communication . . . to patrons" at the Purple Pig Pub in Alamosa, Colorado. *Id.* at 1, 3, ¶¶ 2(d), 11. Because defendants could only have intercepted the broadcast through illegal means, *see id.* at 3, ¶ 10 (noting that plaintiff never gave defendants "license, permission or authority to receive and exhibit the Program"); Docket No. 18-2 at 3, ¶ 9 (affidavit by plaintiff stating that plaintiff's programming "cannot be mistakenly, innocently, or accidentally intercepted), the Court finds plaintiff's allegations sufficient to establish liability under §§ 553 and 605. *See J & J Sports Productions, Inc. v. Twiss*, No. 11-cv-01559-WJM-KLM, 2012 WL 1059990, at *3-4 (D. Colo. March 2, 2012) (finding that plaintiff had met the statutory requirements for liability under §§ 553 and 605 where defendant exhibited the broadcast without authorization, defendant could only have intercepted the broadcast by illegal means, and the broadcast was transmitted by cable and satellite), *recommendation adopted by* 2012 WL 1060047 (D. Colo. Mar. 29, 2012); *Kingvision Pay-Per-View, Ltd. v. Gutierrez*, 544 F. Supp. 2d 1179, 1183 (D. Colo. 2008) (finding

5

allegations sufficient to establish violations of 47 U.S.C. §§ 553 and 605 where plaintiff alleged that defendants were not authorized to broadcast the program in their restaurant, the broadcast could only have been accomplished through illegal means, and the services intercepted or received were also distributed via cable).

Plaintiff also seeks to hold defendant Joe Andrew Trujillo individually liable for the unlawful broadcast. To prevail on this individual liability theory under §§ 553 and 605, plaintiff must demonstrate that defendant Trujillo "had the right and ability to supervise the violations of the piracy statutes," and that he "had a strong financial interest in exploiting the pirated materials." *Joe Hand Promotions, Inc. v. Kay*, 2016 WL 9819535, at *8 (D.N.M. Aug. 3, 2016) (internal quotation marks and brackets omitted); *DIRECTV, LLC v. Taylor*, No. 13-cv-02551-WJM-CBS, 2014 WL 3373448, at *2 (D. Colo. July 10, 2014) ("[T]o establish vicarious liability of an individual for a violation of 47 U.S.C. § 605, the plaintiff need only show that the individual defendant had the 'right and ability to supervise' the violations, and that she had a 'strong financial interest' in exploiting the copyrighted materials."). Here, plaintiff alleges that defendant Trujillo was an officer, director, shareholder, member and/or principal of the entity that owns the Purple Pig Pub on the date of the Program. Docket No. 1 at 2, ¶ 3; *see also* Docket No. 18-6 at 4 (Articles of Incorporation listing Joe Andrew Trujillo as the manager and registered agent of Purple Pig, LLC). Plaintiff further alleges that defendant Trujillo "had a right and ability to supervise the activities" of the Pub as well as "an obvious and direct financial interest" in those activities. Docket No. 1 at 2, ¶ 3. These allegations, which are deemed admitted as a result of defendants' default, suffice to establish defendant Trujillo's individual liability. *See Taylor*, 2014 WL 3373448, at *2 (finding

6

nearly identical allegations sufficient to establish individual liability); *see also Kay*, 2016 WL 9819535, at *8 (denying summary judgment on individual liability theory where the undisputed facts demonstrated that the individual defendants had the right and ability to supervise the streaming of the broadcast and did so in order to increase their profits).

### C. Damages

Although plaintiff has established liability under both § 553 and § 605, plaintiff may only recover under one section. *See Gutierrez*, 544 F. Supp. 2d at 1184 (stating that "recovery under *both* section 553 and section 605 is improper"). Plaintiff elects to recover damages under § 605. *See* Docket No. 18-1 at 5.

Section 605 allows recovery of statutory damages in an amount "not less than $1,000 or more than $10,000" for each violation of the statute. 47 U.S.C. § 605(e)(3)(C)(i)(II). "[M]ost cases applying this statute in a commercial context have interpreted the showing of an event on a single night as one violation." *Gutierrez*, 544 F. Supp. 2d at 1184 (quoting *Garden City Boxing Club v. Perez*, 2006 WL 2265039, at *5 (E.D.N.Y. Aug. 8, 2006). Accordingly, the Court finds that defendants' alleged broadcast of the Program on November 12, 2016 constitutes one violation of § 605(a).

Plaintiff seeks $5,000 in statutory damages for that violation. *See* Docket No. 18-1 at 6. In assessing the reasonableness of that amount, the Court will consider the licensing fee that defendants would have paid based on the potential occupancy of the space, any cover charge paid by the patrons in attendance on the night of the Program, and any profits associated with the purchase of food and drink during the Program. *See J & J Sports Productions, Inc. v. Valdovines*, No. 11-cv-02938-PAB-KMT, 2012 WL

3758841, at *3 (D. Colo. Aug. 28, 2012) (considering both licensing fee and cover charge in determining statutory damages); *Twiss*, 2012 WL 1059990, at *5-6 (recommending award of maximum amount of statutory damages based on licensing fee, cover charge, and "the presumed profit associated with the patronage of 90 people (in terms of food and drink)"). The Court is also cognizant that "unauthorized access to [programming] reduces demand and depresses the prices that plaintiff can charge for sublicenses." *Twiss*, 2012 WL 1059990, at *6 n.5. The amount of statutory damages should be roughly proportional to the loss suffered, *Taylor*, 2014 WL 3373448, at *3 (quoting *Kingvision Pay-Per-View, Ltd. v. Jasper Grocery*, 152 F. Supp. 2d 438, 442 (S.D.N.Y. 2001), and plaintiff has the burden of showing that it is entitled to any award greater than the statutory minimum. *Id.*

Here, plaintiff states that the commercial sublicensing fee would have been $998 for a maximum fire code occupancy of between seventy-six and one hundred persons. *See* Docket No. 18-2 at 2-3, ¶ 7; *see also* Docket No. 18-3 at 2 (expressing opinion that maximum occupancy of Purple Pig Pub is one hundred people). Plaintiff also presents evidence that there was no cover charge, the Program was exhibited on two sixty-to-seventy-inch television screens, and there were approximately fifty patrons in the establishment at the time of the Program. *See* Docket No. 18-3 at 1-2. Finally, plaintiff asserts "damage to its goodwill and reputation and loss of its right and ability to control and receive fees for the transmission" of events as a result of defendants' unlawful conduct. Docket No. 18-1 at 8. Considering these factors and the awards in other cases, *see, e.g.*, *Zuffa LLC v. Gonzalez*, No. 17-cv-01805-CMA-NYW, 2017 WL

8

6016403, at *3 (D. Colo. Nov. 14, 2017) (awarding $5,000 in statutory damages where the sublicensing fee would have cost $2,250, defendants exhibited the broadcast on five of their six televisions, and the occupancy of the restaurant was between 101 and 200 people); *Taylor*, 2014 WL 3373448, at *3 (awarding $1,500 where plaintiff had not offered any evidence of the "profit that it was deprived of" and thus had failed to show an entitlement to damages significantly greater than the statutory minimum); *J & J Sports Productions, Inc. v. Rivas*, 2012 WL 3544834, at *2 (N.D. Okla. Aug. 16, 2012) (finding $2,500 to be an appropriate award of statutory damages where the sublicense fee would have been $2,200, no cover fee was charged, there were no more than fifteen patrons in the restaurant at the time of the broadcast, and there was no evidence of a financial benefit to the defendant or of repeated violations of the statute), the Court finds that $3,000 in statutory damages constitutes appropriate compensation for defendants' violation of § 605(a).

Plaintiff also seeks $20,000 in enhanced damages for a willful violation under § 605(e)(3)(C)(ii). That section provides:

> In any case in which the court finds that the violation was committed willfully and for purposes of direct or indirect commercial advantage or private financial gain, the court in its discretion may increase the award of damages, whether actual or statutory, by an amount of not more than $100,000 for each violation [of § 605(a)].

47 U.S.C. § 605(e)(3)(C)(ii). Courts consider the following factors in determining whether to award enhanced damages for willful conduct under § 605(e)(3)(C)(ii): "repeated violations over an extended period of time; substantial unlawful monetary gains; significant actual damages to plaintiff; defendant's advertising for the intended broadcast of the event; defendant's charging a cover charge or charging premiums for

9

food and drinks." *Gutierrez*, 544 F. Supp. 2d at 1185 (quoting *Kingvision Pay-Per-View, Ltd. v. Recio*, 2003 WL 21383826, at *5 (S.D.N.Y. June 11, 2003)). While the allegations and evidence presented in this case are sufficient to show that defendants' "broadcast of the Program was willful and for purposes of direct or indirect commercial advantage or private financial gain," *id.* at 1185 (internal quotation marks omitted); *see also* Docket No. 1 at 4, ¶ 13 (alleging that defendants' actions were "committed willfully and with the purpose and intent to secure a commercial advantage and private financial gain"); Docket No. 18-2 at 3, ¶ 9 (stating that plaintiff's programming "cannot be mistakenly, innocently, or accidently intercepted" and listing various methods used by signal pirates to unlawfully intercept and broadcast programming); *Joe Hand Promotions, Inc. v. Carter*, No. 18-cv-01105-RM-MEH, 2018 WL 3640713, at *4 (D. Colo. Aug. 1, 2018) (report and recommendation) (finding sworn affidavit stating that the programming "cannot be mistakenly, innocently, or accidentally intercepted" and detailing methods used to intercept plaintiff's programming sufficient to demonstrate a willful violation of the statute); *Valdovines*, 2012 WL 3758841, at *3 (finding willful conduct where plaintiff had "identifie[d] reasons to believe that the violations were committed willfully" and defendant "admit[ted] that its conduct [met] the requirements of § 605(e)(3)(C)(ii)" by failing to participate in the case), the factors identified above do not support a large enhanced damages award. In *Gutierrez*, the court awarded enhanced damages equal to three times the statutory damages award where the plaintiff had not shown a significant loss of revenue or presented any evidence of prior violations, significant earnings by the defendant, advertising to attract a large crowd, the

charging of a cover fee, or the charging of a premium for food and drinks. *See* 544 F. Supp. 2d at 1185. Similarly in this case, plaintiff has demonstrated only $998 in lost revenue based on defendants' failure to pay the applicable sublicense fee; plaintiff's own evidence shows that defendants did not charge a cover fee on the night of the programming, *see* Docket No. 18-3 at 1 (stating that there was no cover charge to enter the Purple Pig Pub on November 12, 2016, and "no doorperson"); there is no indication that defendants charged a premium for food and drinks, *see* Docket No. 18-2 at 5-6, ¶ 16 (stating "it is undetermined whether the prices paid by an auditor at a pirate location on fight night are in fact less than or equal to the normal prices charged by the pirate establishments"); and there is no evidence of any prior violations on the part of defendants. Finally, although plaintiff asserts that "the broadcast of the Event was advertised on [Purple Pig Pub's] Facebook page, Docket No. 18-2 at 5, ¶ 15; Docket No. 18-6 at 1, ¶ 3, a screenshot submitted by plaintiff indicates that the only publicity regarding the event came from a patron's post on the Facebook page. *See* Docket No.18-6 at 7. In light of the foregoing, defendants have not provided sufficient information to justify an enhanced damages award in the amount of $20,000. The Court nevertheless recognizes the importance of addressing the willfulness of defendants' conduct and deterring future violations. *See Gutierrez*, 544 F. Supp. 2d at 1185. For purposes of achieving these goals, the Court finds an enhanced damages award of $9,000, or treble the statutory damages, to be appropriate under § 605(e)(3)(C)(ii). *See id.* (finding that an award equal to "treble the principal damages" would be adequate to address the willfulness of defendants' conduct and deter future

violations); *see also Taylor*, 2014 WL 3373448, at *3 (following logic in *Gutierrez* to award enhanced damages in the amount of $4,500, or treble the statutory damages).

### D. Attorney's Fees and Costs

Under 47 U.S.C. § 605(e)(3)(B)(iii), the Court shall award a prevailing plaintiff its "full costs," including "reasonable attorneys' fees." Plaintiff requests costs in the amount of $400, *see* Docket No. 18-1 at 12; Docket No. 18-6 at 2, ¶ 11, which the Court finds reasonable in light of the $400 filing fee for civil actions in the District of Colorado. The Court will also grant plaintiff's request to file a separate application for attorney's fees. *See* Docket No. 18-1 at 5, n.1; Docket No. 18-6 at 2, ¶ 10.

## IV. CONCLUSION

For the foregoing reasons, it is

**ORDERED** that plaintiff's Notice of Motion and Motion for Default Judgment [Docket No. 18] is **GRANTED** in part and **DENIED** in part as stated in this order. It is further

**ORDERED** that the Clerk shall enter judgment in favor of Joe Hand Promotions, Inc. and against Purple Pig, LLC and Joe Andrew Trujillo in the amount of $12,400.00, consisting of: (1) statutory damages in the amount of $3,000.00 pursuant to 47 U.S.C. § 605(e)(3)(C)(i)(II); (2) enhanced damages in the amount of $9,000.00 pursuant to 47 U.S.C. § 605(e)(3)(C)(ii); and (3) costs in the amount of $400.00 pursuant to 47 U.S.C. § 605(e)(3)(B)(iii). It is further

**ORDERED** that plaintiff may seek an award of attorney's fees pursuant to 47 U.S.C. § 605(e)(3)(B)(iii) by filing a motion for attorney's fees that complies with Fed. R.

Civ. P. 54(d)(2) and D.C.COLO.LCivR 54.3.  It is further

    **ORDERED** that this case is closed.

DATED September 13, 2018.

                                        BY THE COURT:

                                        s/Philip A. Brimmer
                                        PHILIP A. BRIMMER
                                        United States District Judge